UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-00154 (JRT/DTS)

United states of America,

v.

**DEFENDANT'S POSITION WITH
RESPECT TO SENTENCING**

Joshua Benjamin Scott,

Defendant.

_____

Defendant Joshua Benjamin Scott, by and through his undersigned counsel,

Brian Toder, respectfully requests this Court to sentence Mr. Scott to a term of

imprisonment of time-served coupled with 36 months of supervised release

tantamount to house arrest. Such sentence is sufficient but not greater than

necessary within the meaning of the Section 3553(a)(2) sentencing factors. With

one exception,[1] Mr. Scott has no objections to the Guidelines calculation

memorialized in the PSR (Doc. 41), nor to the factual recitations in the PSR unless

inconsistent with that objection. With that enhancement the calculated

Guidelines range is 41 to 51 months of imprisonment based on a Total Offense

Level of 15 and a Criminal History Category of VI. Without the enhancement, the

_____

[1] As will be discussed *infra*, Mr. Scott objects to the Presentence Investigation Report's ("PSR")
injection of USSG §2K2.1(b)(6)(B) into the calculation at paragraph 16.

calculated Guidelines range is 30 to 37 months of imprisonment based on a Total Offense Level of 12.

Mr. Scott believes there are mitigating factors, well recognized in 18 U.S.C. § 3553(a) that here establish the fairness of a sentence well below whatever Guidelines range survives Mr. Scott's argument respecting the PSR's four level enhancement for an event that was not part of or related to the Indictment. His medical condition is crippling. It is not defined so much by the need for sophisticated treatment, as it is by the need of very personal care just to get through each day.

## LEGAL BACKGROUND

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines are advisory, and there is no presumption that a sentence within the Guidelines is reasonable. *United States v. Henson*, 550 F.3d 739, 740 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)); *Nelson v. United States*, 55 U.S. 350, 129 S.Ct. 890, 892 (2009).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a)

factors to determine whether they support the sentence requested by a party."

*Gall*, 552 U.S. at 49-50; 18 U.S.C. § 3553(a).

## FACTUAL BACKGROUND

On November 13, 2023, Minneapolis police determined through cell phone location information that Mr. Scott, a convicted felon, was at a certain location and arrested him because he had been seen on a surveillance video with a firearm on November 2, 2023. (PSR, ¶ 9.) Police searched him, and in his parked vehicle they recovered a Ruger 9mm pistol. (*Id*.)

The November 2, 2023 surveillance video revealed Mr. Scott arguing with an individual, and in the course of the verbal exchange Mr. Scott removed what appeared to be a firearm and "held the gun down by his right thigh while the argument continued." (PSR, ¶ 7.)

## THE PSR ERRED IN APPLYING USSG 2K2.1(b)(6)(B)

As a threshold matter, it should be noted that the PSR's description of Mr. Scott's argument is not completely accurate in one material aspect. Mr. Scott is not simply arguing that the November 2, 2023 event giving rise to a four-level increase was different than the date of the *arrest*." (PSR, p. A.1 at ¶ 1) (emphasis

added). Instead, Mr. Scott argues that it was different and unrelated to the event

in the Indictment, to wit:

## COUNT 1
### (Felon in Possession of Firearm)

On or about November 13, 2023, in the State and District of Minnesota, the defendant,

**JOSHUA BENJAMIN SCOTT,**
a/k/a "Thirsty,"

having previously been convicted of the following crimes, each of which was punishable by imprisonment for a term exceeding one year:

| Offense | Place of Conviction | Date of Conviction |
|---|---|---|
| Felon in Possession of a | Hennepin County, | May 15, 2017 |
| Theft of a Motor Vehicle | Hennepin County, | February 15, 2017 |

and knowing he had been convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that is, a Ruger model P95DC 9mm semi-automatic pistol bearing serial number 31145214; all in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

Indictment (Doc. 1.)

The Indictment charges Mr. Scott with a discrete criminal act committed on a

specific day, November 13, 2023. He immediately accepted responsibility. He waived

pretrial motions. He pled guilty as soon as he could and thereby gave up some of the

most cherished rights he would otherwise enjoy as an American. He gave up those

rights because he understood that he deserved to pay a price for his conduct.

The government was not satisfied with his merely pleading guilty to exactly what he was charged with in the Indictment. It successfully persuaded the author of the PSR to rewrite the preliminary Presentence Investigation Report to include as relevant conduct a different event, different date, different place and different *dramatis personae*. "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3(a)(2) App. N. 5(B).

The "one common factor" identified in the PSR is the allegation that "the firearm used [in the November 2nd event] was the same firearm seized [in the November 13th event for which he was indicted]." (PSR at A.2.) The firearm used on November 2, 2023 was never identified. There is no evidence that the firearm Mr. Scott possessed when he was arrested November 13, 2023, is the same one he allegedly possessed November 2, 2023, for which he was charged with being a felon in possession. The unrelated event occurred more than a week before the offense of conviction.  It had nothing to do with the offense of conviction.

Assuming arguendo that whatever happened on November 2, 2023, had something to do with what is singularly charged in the Indictment, there is not, nor could there be a preponderance of evidence that Mr. Scott committed an assault. If there was no assault, it doesn't matter whether or not he brandished a firearm.  There is at

least one report where a law enforcement officer reported Mr. Scott and an individual

pushing each other, but in all the sworn testimony in the search warrant applications

there is no mention of pushing – only apparent verbal altercations. Even if there was

pushing, that is not dispositive. There are no reports of Mr. Scott pushing anyone while

brandishing a firearm.

Notably, in the November 2, 2024 incident he was charged in a State Court

Complaint, but he was not charged with assault even though the probable cause

statement revealed that he brandished a firearm.

The PSR offers three cases[2] to support its position, *United States v. Bridges*, 569

F.3d 374 (8th Cir. 2009); *United States v. Betts*, 509 F.3d 441 (8th Cir. 2007) and *United States

v. Anderson*, 339 F.3d 720 (8th Cir. 2003). All of these cases found an assault coupled with

a felon in possession, but all of the assaults were committed during the conduct giving

rise to the crimes of conviction and with stronger facts supporting an assault.

## DEPARTURE AND VARIANCE

Departure

### §5H1.4.   Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction (Policy Statement)

Physical condition or appearance, including physique, may be relevant in
determining whether a departure is warranted, if the condition or

---

[2] PSR at A.2

appearance, individually or in combination with other offender
characteristics, is present to an unusual degree and distinguishes the case
from the typical cases covered by the guidelines. An extraordinary
physical impairment may be a reason to depart downward; _e.g.,_ in the
case of a seriously infirm defendant, home detention may be as efficient
as, and less costly than, imprisonment.

Mr. Scott's medical condition presents a paradigmatic application of the proper

use of §5H1.4.

Earlier in this case Mr. Scott successfully argued for a change in his conditions of

pretrial release, offering the following in support:

> July 17th, 2024
>
> To Whom it May Concern;
>
> Joshua Scott has been in my care since May 23rd, 2024. Mr. Scott was a victim of a gun
> shot wound to the spine on February 27th, 2024. This resulted in a long hospitalization at
> Hennepin County Medical Center. He was discharged on April 13th, 2024. He was then
> rehospitalized at United Hospital. He is currently engaged in physical and occupational
> therapy three times a week to regain functioning.
> Due to his injury he has lost function in his legs and requires 24 hour care due to
> needing assistance with bowel movements. This care is currently spread between family
> members across several households. Family members also fill in the gaps if medical
> transportation is not available to attend his appointments. The conditions of his house
> arrest make it difficult for family to provide care as he must stay at his primary residence
> from 10PM-7AM and care is not always available. Thus, we request a reasonable
> accommodation be made such that he is able to stay with any of the family members
> who are providing care.
>
> Sincerely,
>
> Sandra Japuntich, Ph.D., L.P.
> Clinical Psychologist
> Hennepin Healthcare

Ex. A to Toder Decl. (correspondence from Dr. Japuntich) (Docs. 24-1 and 24).

The PSR captures the details of his medical condition, but there simply are no

words to describe the suffering Mr. Scott endures, nor to describe the effects

imprisonment will have. With the benefit of Dr. Japuntich's report and paraphrasing paragraphs 77-79 of the PSR, we know that on February 27, 2024, he was shot twice, damaging his spine, colon and leg. He lost the function in his right leg. He requires a wheelchair. He is incontinent and needs help with bowel movements. He struggles with concomitant mental issues, including a diagnosis of trauma and stressor related disorder coupled with PTSD, depression and sleeping problems.

Mr. Scott presently has the support of his family members and would continue to do so. Given the magnitude of adverse medical condition, Mr. Scott deserves the benefit of a departure as provided in §5H1.3.

Variance

The PSR highlights several § 3553(a) factors without coming to any conclusions regarding a variance, but on this record, a number of these factors taken collectively support a sentence of time-served coupled with appropriate conditions of supervised release. Mr. Scott has an extensive criminal history, but most notably, he has had no convictions for any criminal offense in the six years prior to the instant offense. The instant offense, possession of a firearm, was not in conjunction with another criminal offense. It was born of fear and a need to protect himself.

Having endured 20 custodial sentences since 2005 and none in the last six years suggests that something has changed in Mr. Scott's life. One thing gleaned from his

biography is that controlled substances played a role, they still do and that needs to be addressed as a paramount condition of supervised release.

The forgoing observations reveal mitigation factors, but most compelling is the concept of "just punishment." 18 U.S.C. § 3553(a)(2)(A).

There is the concept of time and hard time. Many federal prisons do their best to accommodate inmates, but "walking the yard" has a whole new meaning when you are in a wheelchair. Help with your hygiene is presently an unknown. Pain mitigation is an unknown. A court can recommend a geographic area or even a specific facility, but that is still only a recommendation. If Mr. Scott ends up in an unaccommodating prison, each month will be tantamount to a year. Very hard time.

## SUMMARY

Given the foregoing, just punishment should be focused on three years of supervised release. Time-served or house arrest is indicated.

Respectfully submitted,

**CHESTNUT CAMBRONNE PA**

Dated:  December 23, 2024          By  /s/ Brian N. Toder
                                   Brian N. Toder, #17869X
                                   100 Washington Avenue South
                                   Suite 1700
                                   Minneapolis, MN  55401
                                   Tel (612) 339-7300
                                   Fax (612) 336-2940
                                   btoder@chestnutcambronne.com

9